UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| TERRANCE RUSH, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 11-cv-5950 |
| DAVID A. REDNOUR, Warden, | ) | |
| Menard Correctional Center, | ) | |
|     Respondent. | ) | Judge Sharon Johnson Coleman |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

    Rush was first tried for first degree murder of Decotis Kincaid ("Kincaid") in January 2008, but the jury reached a stalemate and a mistrial was declared. After a second jury trial, Rush was found guilty of first degree murder and sentenced to seventy-five years imprisonment. On August 26, 2011, Rush filed this instant petition for writ of habeas corpus. Rush argues that his 14th Amendment due process rights were violated because he was not found guilty beyond a reasonable doubt and because the trial court abused its discretion in allowing an officer to testify that an eye witness feared him. For the following reasons, Rush's petition for writ of habeas corpus is denied.

**Background**

    For purposes of a habeas petition, the factual findings of the state appellate court are presumed to be correct. 28 USC § 2254(e)(1). Accordingly, the facts here are taken from the Illinois Appellate Court's recitation of the facts in its direct review of Rush's case.

    On September 7, 2006, Betty Hunt ("Hunt") testified that at 11:27 pm, while eating in her backyard, she heard gunshots coming from O'Halloren Park. Hunt ran to an alley located adjacent to her garage, at the rear of her property, to check if her sons were around. Hunt later learned that they were at a gas station on 85th Street. Hunt then saw petitioner Terrance Rush ("Rush") walking down the street with William Levell Young ("Levell") who had his arm against his chest. Hunt testified that she saw a car pull up and heard Rush say "my boy got shot" before Rush aided Levell into the car which drove away. Hunt testified that she saw Rush with a gun, walking toward the alley behind her house and that she saw another man run out of the

1

alley. Hunt testified that the man stopped near her garage and Rush approached him pointing his gun at him. Hunt testified that she went behind a tree, covered her eyes, and called her boyfriend when she heard gunshots. Hunt saw the unknown man from the alley fall to the ground and heard him ask her to call 911. When the police arrived, Hunt told them what she had witnessed. Hunt did not see Rush shoot the man nor did she see where he went after the shooting.

The next morning, on September 8, 2006, Hunt went to police headquarters and identified Rush as the shooter. Hunt also provided a written statement in which she recounted seeing Rush point his gun at the head of the man and hearing the gun fired six times. At trial, however, Hunt testified that she was high when she gave the written statement. Hunt also claimed to be high when she appeared before a grand jury and gave testimony similar to her prior written statement.

Levell also testified at trial. He testified that on the night of the shooting he was at O'Halloren Park with Rush, a friend named "Rawlo," and a man named "Boo." Levell testified that he did not see Rush with a gun, but that while at the park he heard gunfire and was shot in the right forearm. Levell stated that he ran from the park toward Hermitage Avenue, and that he ran into his friends at 84th Street and Hermitage Avenue. Levell claimed that his friends drove him home and he denied seeing Rush after the shooting. Levell testified further that he gave a statement concerning the shooting prior to trial. Levell later claimed at trial that he made the statement up because he wanted to go home when questioned. In the statement, Levell had stated that he saw Rush force a person to bend over a car parked on Wood Street and that Rush had pointed a gun in the person's face. In the statement, Levell further stated that he saw Rush come into his friend Jeremy's backyard and that Rush flagged down a ride for Levell after Levell was shot at the park. Like, Hunt, on trial Levell later denied the truthfulness of both his statement and his grand jury testimony.

Lamont Colbert ("Colbert") testified at trial that he was in a parked car on the edge of O'Halloren Park on the night of the shooting. Colbert testified that Rush, Levell, "Rawlo," and Kincaid, who was also known as "Boo," were at the park and that there was a confrontation between Kincaid and someone Colbert believed to be Rush. Colbert testified that Rawlo ran into the park and shot Levell. Colbert then drove away from the park and testified that as he approached 84th Street, he saw Kincaid crawling away from someone. Colbert saw the person shoot Kincaid once as he crawled and Colbert testified that the gun was a gun that he had seen in

Rush's hand at the park. Colbert did not report what he had seen to the police until after he had been arrested for residential burglary on September 30, 2006.

During the trial, a chief medical examiner for Cook County also testified that she performed the autopsy of Kincaid's body and that Kincaid had died of multiple gunshot wounds. The medical examiner testified that Kincaid's gunshot wounds were consistent with a shooter standing over the victim while shooting, but that not all of his wounds were consistent with the victim lying on his stomach. The medical examiner testified that those wounds could be consistent with the victim rolling over or moving from side to side. A Chicago police officer who was one of the first investigators on the scene also testified that Hunt seemed afraid for her sons' safety because she saw the shooting and recognized the shooter as Rush who lived on her block and grew up with her sons. Assistant State's Attorneys also testified regarding their roles in the case including taking statements from Hunt, Levell, and Colbert and questioning them before the grand jury.

Rush was first tried for the first degree murder of Kincaid in January 2008, but the jury reached a stalemate and a mistrial was declared. After a second jury trial, Rush was found guilty of first degree murder and sentenced to seventy-five years imprisonment. Rush appealed his case to the Appellate Court of Illinois, First Judicial District arguing: (1) that the circuit court violated the Illinois Supreme Court Rule 431(b) by failing to establish that each prospective juror understood and agreed with the four principles enunciated in *People v. Zehr*, 103 Ill. 2d 472; (2) that the State failed to prove him guilty beyond a reasonable doubt; (3) that he was denied a fair trial when an officer testified about Hunt's fears for her sons; and (4) that his seventy-five year sentence was excessive in light of his potential for rehabilitation and lack of a prior criminal history. The appellate court affirmed the circuit court's judgment and Rush, represented by counsel, filed a petition for leave to appeal in the Illinois Supreme Court. In his petition for leave to appeal to the Illinois Supreme Court, Rush's sole argument was that the trial court's failure to comply with the Illinois Supreme Court Rule 431(b) constituted plain error, requiring reversal.

On August 26, 2011, Rush filed this instant petition for writ of habeas corpus. Rush argues that his 14th Amendment due process rights were violated because he was not found guilty beyond a reasonable doubt and because the trial court abused its discretion in allowing an officer to testify that Hunt feared Rush.

**Legal Standard**

Before a district court can address a habeas petition on its merits, a petitioner must have both exhausted his state remedies and avoided any fatal procedural defaults. *See* 28 U.S.C. § 2254(b). If the claim comes from the Illinois state courts, the petitioner must have presented each claim in the habeas petition to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). A petitioner's failure to timely present each habeas claim to the state's appellate and supreme court leads to default, thus barring the federal court from reviewing the claim's merits. *Id*.

**Discussion**

Rush raised his claims that his due process rights were violated because (1) he was not found guilty beyond a reasonable doubt and (2) a police officer was allowed to testify about Hunt's fear of Rush, on direct appeal. (Ex. A at 12, 14). However, Rush did not raise these arguments in his petition for leave to appeal to the Illinois Supreme Court. (Ex. E). Rush's sole argument in his petition for leave to appeal was that the trial court's failure to comply with Illinois Supreme Court Rule 431(b) constituted plain error, requiring reversal. (Ex. E). A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claims at each level of state court review has procedurally defaulted those claims. *Smith*, 598 F.3d at 382. Because Rush failed to raise his present federal issues in a full round of appellate review, they are procedurally defaulted or waived. *United States ex rel. Lyles v. Atchison*, No. 12 C 2099, 2013 U.S. Dist. LEXIS 13048, at *6-7 (N.D. Ill. Jan. 31, 2013) (citing *Smith*, 598 F.3d at 383).

Furthermore, Rush cannot cure this procedural default because he has not shown good cause for the default, actual prejudice from the alleged error, or that failure to consider this claim will result in a fundamental miscarriage of justice. *See Badelle v. Correll*, 452 F.3d 648, 661 (7th Cir. 2006). Ordinarily, cause for a default is established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025-1026 (7th Cir. 2004). "Prejudice is established by showing that the violation of the petitioner's federal rights worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. (internal

citation omitted). Rush has not argued or shown any such impediment or substantial disadvantage.

**Conclusion**

Rush's petition for writ of habeas corpus is denied.

IT IS SO ORDERED.

Date: May 17, 2013

_____
Sharon Johnson Coleman
United States District Judge